**John. R. MALEK, Appellant,**

**v.**

**Karen SHORTRIDGE, Appellee.**

**No. 87–2282.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1988.

Decided Aug. 30, 1988.

Rehearing and Rehearing En Banc
Denied Nov. 3, 1988.

Stephanie Weber Milone, Omaha, Neb., for appellant.

Lynne R. Fritz, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before ARNOLD, Circuit Judge, TIMBERS,[*] Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ARNOLD, Circuit Judge.

In this habeas action John Malek contends that he was denied due process and subjected to double punishment for a single offense. The District Court[1] adopted the magistrate's[2] recommendation that the writ be denied. We affirm the District Court, with some observations, however, as to relief other than immediate release to which Malek may have a legitimate claim.

In 1978 Malek was serving the first of two consecutive sentences for robbery imposed by a judge in Douglas County,

---

[*] The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

**1.** The Hon. Warren K. Urbom, United States District Judge for the District of Nebraska.

**2.** The Hon. David L. Piester, United States Magistrate for the District of Nebraska.

Nebraska. He escaped from custody in February of that year, but then surrendered a few days later. This appeal arises out of the sentence he received from a Lancaster County judge after pleading guilty to escaping from prison and being a habitual criminal. Malek claims that the sentencing judge promised him he would be released early if he agreed to combat homosexual assault and drug abuse while in prison. Malek argues that he has kept his side of the bargain, but that the judge has reneged. He contends the breach of this promise constitutes a violation of due process. Moreover, Malek argues that he was in effect sentenced both to serve time in prison and to work to stop homosexual assault and drug abuse, and that this was double punishment for a single offense, in violation of the Double Jeopardy Clause.

Malek's contention with respect to the broken promise can be interpreted in two ways: either he was told he would be released in three years or he was told the judge would intercede on his behalf to help him get parole. A review of the record of the sentencing hearing reveals that in a colloquy with a social worker, Malek promised to fight homosexual assault and drug abuse. The social worker remarked that, if Malek kept his word, the two of them could be swimming together at the YWCA in three years. After that exchange, the judge admonished Malek to keep his oath, warning him it would not be easy. The judge said he wished he could be lenient with Malek, but that the law mandated a minimum sentence of ten years. He then plainly sentenced Malek to ten years in prison, and he told Malek this sentence was to run consecutively to the earlier convictions. However, the judge also indicated that if Malek did as he promised he would "join hands with [Malek] about this long tenure." On these facts, we reject Malek's first interpretation of events. The judge did not promise Malek he would be released early, certainly not after the three years he claims. In fact, since Nebraska law mandated a minimum sentence of ten years for Malek's latest offenses, and since Malek had not yet finished serving his sentences for robbery, the judge did not have the power to have Malek released in three years.

The second interpretation of events is more plausible. The judge did promise at the sentencing hearing and in a later letter to the social worker to intercede on Malek's behalf at the "appropriate time." Unfortunately, that time has not yet come. In 1983 Malek wrote to the Lancaster County district judge and requested a recommendation for early parole. That request was rejected as premature, apparently because Malek was still serving time on his earlier robbery convictions, which originated in another county. Malek could not petition the court in Lancaster County for early parole until 1985, when he began serving the escape sentence. No further request for parole was ever made, at least not in a form considered procedurally appropriate under state law. Thus, we conclude the judge's promise was never broken. We trust, however, now that this technicality has been brought to light, that counsel will again request a recommendation for parole from the Lancaster County district judge. And, if Malek has in fact worked to improve prison conditions, he ought to get his recommendation for early parole. Under Neb. Rev.Stat. § 83–1110(1) any offender is eligible for parole whenever the sentencing judge or his successor in office gives his approval. This does not necessarily mean that Malek would be paroled. That decision lies in the discretion of the Nebraska parole authorities. But a favorable recommendation from the court would at least make Malek eligible for parole consideration, a status he has not yet attained. If he has fulfilled his side of the bargain made at the time of sentencing (and the record before us indicates that he has), we think the sentencing court will keep its side. Apparently a simple letter request from Malek or his lawyer would be sufficient to put the matter before that court for decision.

■ Malek's second argument is that he was subjected to two punishments for the same crime: (1) serving ten years in prison, and (2) working to combat homosexual assault and drug abuse. As noted, the record shows that the judge sentenced Ma-

lek to a single sentence: ten years in prison. Malek's committment to improve prison problems was undertaken voluntarily; he could have stopped at any time. It cannot be considered an additional punishment.

Accordingly, we affirm.